UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIMECAST SERVICES, LTD.,

Plaintiff,

v.

PARTNER1 LLC,

Defendant.

Civil Action No.: __________

**COMPLAINT**

Plaintiff Mimecast Services, Ltd. ("Mimecast") brings this action seeking: (1) a declaratory judgment that Mimecast is entitled to a federal registration of and to use its own MIMECAST PARTNER ONE and PARTNER ONE marks, and that Mimecast is not violating the Lanham Act or New York law by doing so; and (2) partial cancellation of Defendant's U.S. Patent and Trademark Office ("USPTO") Trademark Registration No. 7,734,949 for its PARTNER1 mark by amending the scope of the services listed in that registration to accurately reflect the scope of services offered by Partner1 under its PARTNER1 mark.

**THE PARTIES**

1. Plaintiff Mimecast Services, Ltd. is a United Kingdom limited company with its principal place of business at 1 Finsbury Ave., London, England EC2M2PF, UNITED KINGDOM.

2. Upon information and belief, Partner1 LLC is a New York limited liability company with its principal place of business at 50 Memorial Plaza, Unit 26, Pleasantville, New York 10570, and its registered agent is Republic Registered Agent Services, Inc., 54 State Street, Suite 804, Albany, New York 12207.

## JURISDICTION AND VENUE

3. This action arises under 15 U.S.C. §§ 1114, 1119 and 1125; 28 U.S.C. §§ 2201, *et seq.*; and Rule 57 of the Federal Rules of Civil Procedure.

4. This Court has original jurisdiction pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, as this action arises under the laws of the United States and the Declaratory Judgment Act and, to the extent necessary, this Court has supplemental jurisdiction over any state law claims.

5. Pursuant to CPLR §§ 301 and 302, and the Due Process Clause of the U.S. Constitution, this Court has personal jurisdiction over Defendant because it is a New York limited liability company and is "at home" in New York (and this District); it transacts business in New York; it regularly does or solicits business, or engages in any other persistent course of conduct in New York; and it derives substantial revenue from goods used or consumed or services rendered in New York.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this District and a substantial part of the events, acts, or omissions giving rise to Mimecast's claims occurred in this District.

7. Every allegation contained in the following paragraphs is incorporated herein.

## FACTUAL BACKGROUND

### I. Mimecast Is An International Leader In Selling Cybersecurity Software

#### A. Background

8. Founded over 20 years ago, Mimecast is a leading cybersecurity company transforming the way businesses manage and mitigate human risk. Its AI-powered, API-enabled connected human risk platform is purpose-built to protect organizations from the spectrum of cyber

threats.[1] Integrating cutting-edge technology with human-centric pathways, Mimecast's platform enhances visibility and provides strategic insight. By enabling decisive action and empowering businesses to protect their collaborative environments, Mimecast's technology safeguards critical electronic data, reduces risk, and enhances productivity. More than 42,000 businesses (of all sizes, in diverse industries, and throughout the world) trust Mimecast to help them keep ahead of the ever-evolving digital threat landscape, and to protect at least 27,000,000 end users worldwide.

9. Mimecast has offices throughout the world. Its headquarters is in London (England), and it has other offices in Bengaluru (India); Boston (Massachusetts; U.S.); Cape Town and Johannesburg (South Africa); Dubai (United Arab Emirates); Hilversum (The Netherlands); Tel Aviv (Israel); Jersey (Channel Islands); Melbourne and Sydney (Australia); Munich (Germany); Paris (France); and Singapore. Mimecast has over 2,300 employees worldwide.

10. Mimecast's products include Advanced Email Security (easily manage complex email system environments while enhancing protection and blocking advanced email threats), Incydr (protects critical data from exposure, loss, leak and theft while accelerating incident response times), Aware (identifies and addresses non-compliance, data loss and security threats while accelerating incident response times), Engage (human risk-centric security training and awareness), Collaboration Threat Protection (secures Microsoft Teams, SharePoint and OneDrive with an AI-powered turnkey solution), DMARC Analyzer (stops email domain spoofing), and Email Archive (simplifies e-discovery and compliance, streamlines IT environments, and ensures data is never lost).

11. As a result of Mimecast's best-in-breed technology, it has received numerous awards and recognitions for its products. For example, Gartner, Inc. (a leading research

[1] AI is an acronym for "artificial intelligence;" API is an acronym for "application programming interface."

publication) has named Mimecast a Leader in its "Magic Quadrant" for Enterprise Information Archiving eight times (including, most recently, in January 2025). *See, e.g.*, https://www.mimecast.com/resources/press-releases/leader-gartner-mq-dcga/. Mimecast is also the first company in the world to have achieved (in January 2025) the AI Management Systems standard—an international standard that provides a framework for managing AI risks and opportunities, encourages continuous improvement, and covers the entire AI lifecycle. https://www.mimecast.com/resources/press-releases/iso-42001-certification/. Since 2020 alone, Mimecast has also received about 40 other prestigious international awards and recognitions for its software products. *See* https://www.mimecast.com/company/awards/.

### B. Mimecast Launches its "Partner One" Program For its Channel Partners and Resellers of Mimecast's Cybersecurity Products

12. In addition to selling its cybersecurity software to customers directly, Mimecast has long had resellers and channel partners. Generally speaking, Mimecast's channel partners are third parties (such as a managed services provider ("MSP")) that purchase Mimecast's products in volume, and then sell and support them to their end customers as part of a larger offering of products and services that the channel partner provides to its customers. Mimecast offers its channel partners a broad range of services and support for Mimecast's products, who also have a strategic and broad relationship with Mimecast. Mimecast's resellers are similar, but primarily act as intermediaries that resell Mimecast's cybersecurity software to their customers. Mimecast has operated, managed, and administered its channel partner and reseller programs for many years, including in the United States.

13. In September 2023, Mimecast launched its "Partner One" program, which is an evolution and consolidation of its then-existing channel partner and reseller programs into one global program. The purpose of Mimecast's unified "Partner One" program is to deliver a more

streamlined experience to Mimecast's partners (channel partners and resellers) by enhancing the experience, offering new incentives, and providing competencies to help Mimecast's partners gain market share through offering services and solutions to customers globally. *See, e.g.*, https://www.mimecast.com/resources/press-releases/mimecast-partner-one-program/.

14. In connection with the launch of this combined "Partner One" program, Mimecast began using its MIMECAST PARTNER ONE and PARTNER ONE marks in commerce to identify such services in the United States (and throughout the world).

15. Today, Mimecast's "Partner One" program has thousands of channel partners (*e.g.*, resellers or MSPs) throughout the world, including over 1,000 in the United States.

### C. Mimecast's MIMECAST PARTNER ONE and PARTNER ONE Trademarks for its "Partner One" Program

16. On September 18, 2023, Mimecast filed an application to register PARTNER ONE as a trademark with the USPTO under Application No. 79/384,192 (the "PARTNER ONE Application").

17. On May 10, 2024, the USPTO issued a Non-Final Office Action for the PARTNER ONE Application. In it, the USPTO cited a third-party PARTNERONE mark (which was also cited during the prosecution of the PARTNER1 Registration, see below), and Defendant's then-pending application for its PARTNER1 mark (see below).

18. On August 15, 2024, Mimecast responded to the USPTO by (among other things) amending the field of covered services for the PARTNER ONE Application to be (strikethrough deleted, text added):

> Class: 35: ~~Business administration of resellers, distributors, managed service providers, solution and service providers, system integrators, consultants and technology partners program for enabling participants to customize go-to-markets strategies, benefits and requirements;~~ Business administration of a program for resellers, distributors, system integrators, consultants and technology companies for participants to receive customized go-to-markets marketing strategies, benefits

> and requirements information; ~~business administration of resellers, distributors, managed service providers, solution and service providers, system integrators, consultants and technology partners program for providing partners licensing, order management and fulfillment of cyber security products and services, security services and cyber security product integrations;~~ business administration of a program for resellers, distributors, system integrators, consultants and technology companies for providing licensing, order management and fulfillment of cyber security software products.
>
> Class 42: ~~Providing internet-accessible non-downloadable computer software and web applications for enabling resellers, distributors, managed service providers, solution and service providers, system integrators, consultants and technology partners to promote and showcase products and services;~~ Providing temporary use of online non-downloadable computer software and web applications for cyber security services that enables resellers, distributors, system integrators, consultants and technology companies to promote and showcase products and services.

19. With these amendments to the services listed, the USPTO withdrew its refusal of the PARTNER ONE Application (including in light of the then-pending application for Defendant's PARTNER1 mark) and published the PARTNER ONE Application for opposition on March 25, 2025.

20. On April 1, 2025, Defendant filed a Notice of Opposition to the PARTNER ONE Application under Opposition No. 91298162 with the USPTO, which requests that the USPTO refuse registration for the PARTNER ONE Application based upon Defendant's alleged rights in its PARTNER1 mark (the "PARTNER ONE Opposition"). The current deadline for Mimecast to file an Answer in the PARTNER ONE Opposition is June 18, 2025.

21. On May 11, 2024, Mimecast filed an application to register MIMECAST PARTNER ONE as a trademark with the USPTO.

22. On November 25, 2024, the USPTO issued a Non-Final Office Action for the MIMECAST PARTNER ONE application, which stated (in part) that "[t]he trademark examining attorney has searched the USPTO database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). 15 U.S.C. §

1052(d); TMEP § 704.02." The USPTO required that, as a condition for acceptance of that application, Mimecast amend the application's services to add "Business administration" to Class 35 and that Mimecast disclaim the wording "PARTNER" because "it is merely descriptive of an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's services." On January 9, 2025, Mimecast accepted the USPTO's requirements and amended the MIMECAST PARTNER ONE application accordingly (for added language to scope of services, see italicized language in Para. 24, below).

23. The USPTO published the MIMECAST PARTNER ONE application for opposition on February 4, 2025. No opposition was filed.

24. Given the lack of opposition, the USPTO, on March 25, 2025, granted registration for Mimecast's MIMECAST PARTNER ONE mark, which is U.S. Registration No. 7,734,597 ("MIMECAST PARTNER ONE Registration"). On the face of the MIMECAST PARTNER ONE Registration, the scope of the covered services are:

> Class 35: *Business administration* of a program for resellers, distributors, system integrators, consultants and technology companies for participants to receive customized go-to-markets marketing strategies, benefits and requirements information*; business administration* of a program for resellers, distributors, system integrators, consultants and technology companies for providing licensing, order management and fulfillment of cyber security software products.
>
> Class 42: Providing temporary use of online non-downloadable computer software and web applications for cyber security services that enables resellers, distributors, system integrators, consultants and technology companies to promote and showcase products and services.

25. On April 1, 2025, Defendant filed a Petition for Cancellation of Mimecast's MIMECAST PARTNER ONE Registration with the USPTO, which has been assigned Cancellation No. 92087965 (the "MIMECAST PARTNER ONE Cancellation"). The current deadline for Mimecast to file an Answer in the MIMECAST PARTNER ONE Cancellation is June 18, 2025.

## II. Defendant Offers Consulting Services to Companies on Improving Those Companies' Sales and Marketing Efforts

### A. Background

26. According to the New York Department of State, Corporations Division, Defendant was formed as a limited liability company on January 4, 2023.

27. Upon information and belief, Defendant is an information technology consulting company that offers consulting services to companies who are members of "partner" programs that are managed and administered by third parties (such as Microsoft, Amazon Web Services, and Google Cloud Platform) to "de-mystify the process" and to "guide[]" Defendant's consulting clients through how to navigate and optimize their participation in those third party partnership programs. *See* https://www.partner1.io/#solutions.

28. According to LinkedIn, Defendant has between 11 and 50 employees, of which at least 5 have LinkedIn profiles and are located in New York, Maryland, Washington, and Manila (Philippines). *See* https://www.linkedin.com/company/partner1-io/about/

### B. Defendant's Rights In the PARTNER1 Mark Are Limited to "Business Consultancy Services"

29. On May 31, 2023, Defendant filed an application with the USPTO to register PARTNER1 as a trademark, which is Application No. 98/021,177.

30. In that application, Defendant stated that it was seeking registration of the PARTNER1 mark based on actual use in commerce. As a result of Defendant's statement that its claimed basis for registering the PARTNER1 mark, it submitted specimens of alleged actual use which it told the USPTO supported the claimed basis of the services in the application (which is a precondition to registration under actual use). In its application, Defendant represented to the USPTO that such species were a "[m]arketing 1pager describing Partner1's services" and a "[p]rintout of website showing Partner1 services." The substantive portions of such specimens are

reproduced below:




Ready to accelerate your revenue with Microsoft?

Contact us today to learn more about how we can help at hello@partner1.io

# Get Microsoft Ready

## Supercharge your revenue with Microsoft

### Grow your revenue by optimizing your product, sales and marketing efforts with Microsoft

Partner1's team of Microsoft veterans meets you where you are in your Microsoft partnership journey. From startups to unicorns, our experts work with you to craft a custom approach across your sales, marketing and product organizations to maximize your Microsoft incentives, support structure and sales growth.










### What we offer

Get Microsoft alliance and sales teams invested in driving growth of your business by

- Securing incentives, credits and offers from Microsoft
- Optimizing your GTM and messaging to the Microsoft field
- Effectively leveraging Microsoft Marketplace and other sales channels
- Accelerating co-sell with Microsoft
- Leveraging the best of Microsoft's technology and support

## Why Partner1

### Ex-Microsoft Partner and Field Leadership

- Our team has over 30 years of combined Microsoft Leadership Experience
- Overseen growth of hundreds of ISVs' through Microsoft partnership
- Active Microsoft Advisory Board

### Outcomes Focused Approach

- Infuse Industry knowledge with AI domain expertise for high-impact growth strategies
- Comprehensive support throughout GTM journey from strategy development to launch
- Maximize ROI through targeted content and execution tuned to desired business outcomes

### Microsoft Field Alignment

- Compelling collateral aligned with Microsoft field priorities and incentives
- Focus on industry and solution areas for targeted brand awareness, lead generation and sales acceleration
- Scale efficiently through focused messaging

Working with Partner1 is an incredible experience. They have been a critical driving force for development of our strategic partnerships. I have been fascinated to see them driving successful relationships, starting from identifying opportunities through honing relationships over the long-haul, successfully creating win-win outcomes. We recognize and appreciate Partner1's guidance within the MSFT relationship. They have strategic and tactical vision and it has always been a delight working with them.

**- CEO, Data & AI ISV**

© 2021 Partner1 LLC | www.partner1.io | hello@partner1.io








## Microsoft Partnership Activation

Navigate the Microsoft ecosystem with a guide and activate the advantages 87% of partners can't.

Our team will demystify the process and guide you through

- Cost optimization
- Incentives identification and utilization
- Co-sell, marketplace, and GTM readiness
- Marketplace activation
- Co-Sell acceleration
- Co-marketing enablement

Contact Us



## Partner Program Guidance

Get all the know-how without the learning curve.

Our team will help you launch your partner program with

- Strategy Development
- Resource and Budget Planning
- Stakeholder management and Buy-in
- Execution Guidance
- Partner Acquisition Strategies
- Partner Enablement and Marketing
- Team Metrics, Quota, Hiring & Training Guidance
- On-going Mentoring

Contact Us

31. Defendant's specimens of use do not indicate that Defendant's services include anything other than "business consultancy or advisory services" to companies to help them optimize their participation in third parties' "partner" programs, or that Defendant provides "partner program guidance" for clients who are members of third parties' "partner" programs (only

concrete example given assistance with "navigat[ing]" a Microsoft "partnership"). Nor is there any evidence in Defendant's specimens of use (or, upon information and belief, otherwise) that it uses the PARTNER1 mark to administer or manage its own "partner" programs, or to sell any "products" (including, but not limited to, cybersecurity software). Accordingly, Defendant's specimens of use that it submitted to the USPTO during the prosecution of the PARTNER1 application does not suggest, at least, that Defendant is using (or has used) the PARTNER1 mark in connection with "the business administration of programs to third parties." Upon information and belief, Defendant is not using (and has not used) the PARTNER1 mark in connection with its providing "business administration of programs to third parties."

32. Defendant's PARTNER1 application was published for opposition on February 4, 2025 (which was the same day that Mimecast notified the USPTO of the changes to the scope of services and disclaimer of "Partner" in MIMECAST PARTNER ONE application, see above).

33. Based on, among other things, Defendant's representations that the specimens of use accurately described the services listed in the PARTNER1 application, the USPTO issued U.S. Registration No. 7,734,949 for Defendant's PARTNER1 mark (the "PARTNER1 Registration") on March 25, 2025, which was the same day the USPTO also issued Mimecast's MIMECAST PARTNER ONE Registration.

34. On the face of the PARTNER1 Registration, the scope of the covered services are:

> CLASS 35: Business consultancy; Business consultancy services for digital transformation; Business consulting services; Business advisory services, consultancy and information; Business development consulting services; Business management consultancy and advisory services; Business management consulting and advisory services; Business management consulting and advisory services for the technology industry; Business management consulting and advisory services for the startup industry; Business management consulting and advisory services for the enterprise industry; Business management consulting and advisory services for the software industry.

35. In both the MIMECAST PARTNER ONE Cancellation and the PARTNER ONE Opposition, Defendant admits that it only provides "business consultancy and advisory services." As described above, and upon information and belief, Defendant provides such services to companies to help them optimize their participation in third parties' "partner" programs; it does not administer or manage its own "partner" program. Nor, upon information and belief, does Defendant sell any "products" under the PARTNER1 mark (including, but not limited to, cybersecurity software) despite Defendant's claim (in both the MIMECAST PARTNER ONE Cancellation and the PARTNER ONE Opposition) that it "sell[s] substantial quantities of Defendant-branded products in the United States."

36. In both the MIMECAST PARTNER ONE Cancellation and the PARTNER ONE Opposition, Defendant claims that the PARTNER1 mark is "a famous mark within the meaning of Section 43(c) of the Lanham Act, as amended, 15 U.S.C. § 1125(c)." Defendant also claims the PARTNER1 mark is "of sufficient fame and reputation" such that Mimecast's MIMECAST PARTNER ONE and its PARTNER ONE marks are likely to "dilute the distinctive quality" of the "famous" PARTNER1 mark.

37. A search of the USPTO trademark database for wordmark "partner" in International Class 35 with the services containing words with the prefix "consult" returns over 1,440 "live" trademark registrations and pending trademark applications. The use of "partner" as part of a wordmark is, at best, commercially weak in relation to and merely descriptive of the nature of and a quality, characteristic, function, feature, purpose, and use of Defendant's services. In this instance, "partner" is descriptive of the services both that Defendant offers under the PARTNER1 mark and that Mimecast offers under the MIMECAST PARTNER ONE and the PARTNER ONE marks (including as evidenced, in part, by the USPTO requiring Mimecast to "disclaim" any

exclusive rights in "PARTNER" in the MIMECAST PARTNER ONE Registration).

**III. Defendant's Assertion of Trademark Infringement Against Mimecast**

38. On April 1, 2025, Defendant's CEO sent an email to Mimecast's trademark counsel which identified the PARTNER1 Registration and demanded that Mimecast "cease and desist" using the MIMECAST PARTNER ONE and the PARTNER ONE marks "immediately" to "avoid further legal action." That same day, as explained above, Defendant filed the MIMECAST PARTNER ONE Cancellation and the PARTNER ONE Opposition.

39. On April 24, 2025, counsel for Defendant sent a letter to Mimecast's trademark counsel, which accused Mimecast of "trademark infringement and unauthorized use" of the MIMECAST PARTNER ONE and the PARTNER ONE marks, claimed that "the goods and services" offered under the PARTNER1 mark, on the one hand, and the MIMECAST PARTNER ONE and the PARTNER ONE marks, on the other, are "not only closely related but in key respects directly overlap," such that "[t]his significant convergence of subject matter, target market, and commercial channels presents a substantial risk of customer confusion." Therefore, according to Defendant, "there exists a serious and imminent likelihood that consumers will be confused, misled, or deceived into believing that Mimecast's services are affiliated with, endorsed by, or emanate from [Defendant]." Consequently, according to the letter, "Mimecast's continued use of [the MIMECAST PARTNER ONE and the PARTNER ONE marks] constitutes, *inter alia*, trademark infringement, unfair competition, and dilution in violation of the Lanham Act and applicable state law."

40. Defendant's April 24, 2025 letter closed by demanding that Mimecast either pay Defendant a license fee for the PARTNER1 mark or "immediately cease" all use of "[i]nfringing marks," "undertake a complete rebrand," and pay Defendant "a monetary settlement."

41. On June 2, 2025, Mimecast informed Defendant that it was unwilling to agree to

any of its demands in its April 1, 2025 email or its April 25, 2025 letter.

**COUNT I**
**(Declaratory Judgment of No Lanham Act Violations)**

42. Mimecast hereby realleges the foregoing paragraphs as though fully set forth in this claim for relief.

43. Mimecast is unwilling to agree to any of Defendant's demands in Defendant's correspondence of April 1, 2025 and April 24, 2025 and has told Defendant as much.

44. There is no likelihood of trademark infringement or false designations and misrepresentations including within the meaning of 15 U.S.C. §§ 1114, 1125 between Mimecast's use of the MIMECAST PARTNER ONE mark and the PARTNER ONE mark on the one hand, and Defendant's use of the PARTNER1 mark, on the other hand.

45. Mimecast is entitled to declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 because there is an actual and justiciable controversy over whether the MIMECAST PARTNER ONE mark and the PARTNER ONE mark "constitute trademark infringement or false designations and misrepresentations." Absent a declaration to this effect, Defendant will continue to wrongfully allege that Mimecast's services that are promoted, rendered, and offered under the MIMECAST PARTNER ONE and PARTNER ONE marks infringe Defendant's alleged trademark rights or constitute unfair competition under the Lanham Act or New York law, thereby causing Mimecast irreparable injury and damage.

46. Mimecast seeks a declaration that there is no right, title, or interest of Defendant that would prohibit Mimecast's registration of the PARTNER ONE mark or prohibit the USPTO's granting of its PARTNER ONE Application (including in the PARTNER ONE Opposition), nor is there any right title, or interest of Defendant that would warrant the USPTO granting any Defendant's challenge to the MIMECAST PARTNER ONE Registration (including in the

MIMECAST PARTNER ONE Cancellation).

**COUNT II**
**(Declaratory Judgment of No Likelihood of Confusion)**

47. Mimecast hereby realleges the foregoing paragraphs as though fully set forth in this claim for relief.

48. Mimecast is unwilling to agree to any of Defendant's demands in Defendant's correspondence of April 1, 2025 and April 24, 2025, and has told Defendant as much.

49. There is no likelihood of confusion between Mimecast's use of the MIMECAST PARTNER ONE and PARTNER ONE marks on the one hand, and Defendant's use of its PARTNER1 mark on the other, including, but not limited to, because: (a) Mimecast's MIMECAST PARTNER ONE and PARTNER ONE marks are used in the administration of a "partnership" program for Mimecast's channel partners and resellers, whereas Defendant's consulting services are provided to companies that participate in "partner" programs; (b) the weakness of the trademark elements "PARTNER" and "1" or "ONE," particularly for consulting or advisory services; (c) the relevant consumers for both parties' services (Mimecast's "Partner One" program and Defendant's consulting services), are business and technology professionals that are sophisticated and knowledgeable about "partnership" programs and exercise a high degree of care in their purchasing decisions, such that they are not likely to be confused between Mimecast's MIMECAST PARTNER ONE mark or its PARTNER ONE mark on the one hand, and Defendant's PARTNER1 mark on the other; and (d) the meaningful differences between Defendant's business consultancy and advisory services and Mimecast's business administration of partner programs.

50. Mimecast is entitled to declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 because there is an actual and justiciable controversy over whether its use of the MIMECAST

PARTNER ONE and PARTNER ONE marks are "likely to cause consumer confusion" with Defendant's PARTNER1 mark, and because Defendant is opposing the allowance of the PARTNER ONE Application and is seeking to cancel the MIMECAST PARTNER ONE Registration before the USPTO. Absent a declaration to this effect, Defendant will continue wrongfully to allege that Mimecast's services promoted, rendered, and offered under MIMECAST PARTNER ONE and PARTNER ONE marks infringe Defendant's alleged trademark rights or constitute unfair competition under the Lanham Act or New York law, thereby causing Mimecast irreparable injury and damage.

51. Mimecast seeks a declaration that no right, title, or interest of Defendant including, but not limited to, its use of the PARTNER1 mark prohibits Mimecast from using its MIMECAST PARTNER ONE and PARTNER ONE marks in relation to the services listed in the MIMECAST PARTNER ONE Registration and in the PARTNER ONE Application.

**COUNT III**
**(Declaratory Judgment of No Dilution or Likelihood of Dilution)**

52. Mimecast hereby realleges the foregoing paragraphs as though fully set forth in this claim for relief.

53. Mimecast is unwilling to agree to any of Defendant's demands in Defendant's correspondence of April 1, 2025 and April 24, 2025, and has told Defendant as much.

54. In the MIMECAST PARTNER ONE Cancellation and the PARTNER ONE Opposition, Defendant claims that its PARTNER1 mark is "a famous mark within the meaning of Section 43(c) of the Lanham Act, as amended, 15 U.S.C. § 1125(c)." Defendant also claims the PARTNER1 mark is "of sufficient fame and reputation" such that Mimecast's MIMECAST PARTNER ONE Registration (and mark) and Mimecast's PARTNER ONE mark (and PARTNER ONE Application) is likely to "dilute the distinctive quality" of the "famous" PARTNER1 mark.

Defendant's April 24, 2024 letter to Mimecast also alleged that Mimecast's use of its MIMECAST PARTER ONE and PARTNER ONE marks "constitutes…dilution in violation of the Lanham Act and applicable state law."

55. According to 15 U.S.C. § 1125(c), a mark is "famous" if "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

56. Defendant's PARTNER1 mark is not "famous" within the meaning of 15 U.S.C. § 1125(c) (or otherwise), nor has Defendant offered any proof that it is.

57. Mimecast's use of its MIMECAST PARTNER ONE and PARTNER ONE marks will not dilute, and are not likely to dilute, Defendant's PARTNER1 mark, such that such use would "dilute the distinctive quality" of the PARTNER1 mark.

58. Additionally, in both the MIMECAST PARTNER ONE Cancellation and the PARTNER ONE Opposition, Defendant alleges that the USPTO's failure to cancel the MIMECAST PARTNER ONE Registration and allowance of the PARTNER ONE Application "is likely to cause dilution by blurring of" Defendant's PARTNER1 mark "by lessening the capacity of [Defendant's] famous trademark Partner1 [sic] to identify and distinguish [Defendant's] goods and services."

59. Mimecast's use of its MIMECAST PARTNER ONE and PARTNER ONE marks (including if the USPTO does not cancel the MIMECAST PARTNER ONE Registration and does not deny the PARTNER ONE Application) will not cause, and is not likely to cause, "dilution by blurring" within the meaning of 15 U.S.C. § 1125(c).

60. Mimecast seeks a declaration that its use of the MIMECAST PARTNER ONE and the PARTNER ONE marks will not dilute Defendant's PARTNER1 mark, and also that such use will not cause "dilution by blurring" of Defendant's PARTNER1 mark.

**COUNT IV**
**(Partial Cancellation by Restriction Pursuant to 15 U.S.C. § 1119)**

61. Mimecast hereby realleges the foregoing paragraphs as though fully set forth in this claim for relief.

62. In its April 24, 2025 cease-and-desist letter, Defendant claims that Mimecast's use of its MIMECAST PARTNER ONE mark and its PARTNER ONE mark for, among other things, "the business administration of programs to third parties" is "not only closely related but, in key respects, directly overlaps with" Defendant's "business consultancy and advisory services."

63. The "business consultancy and advisory services" listed in the PARTNER1 Registration are separate and distinct from (and are not closely related to) services from those listed on the face of the MIMECAST PARTNER ONE Registration and the PARTNER ONE Application, which are for "business administration of a program for resellers, distributors, system integrators, consultants and technology companies for participants to receive customized go-to-markets marketing strategies, benefits and requirements information; business administration of a program for resellers, distributors, system integrators, consultants and technology companies for providing licensing, order management and fulfillment of cyber security software products."

64. Defendant has not provided any evidence that it uses the PARTNER1 mark to

market and sell "business administration of a program" services, in connection with the PARTNER1 Registration (or otherwise); nor, upon information and belief, can Defendant provide such evidence. On the contrary, the specimens of use that Defendant submitted to the USPTO during the prosecution of the PARTNER1 Registration demonstrates the actual and limited use of the PARTNER1 mark by Defendant (which is "business consultancy and advisory services"). Because Defendant has not demonstrated (and, upon information and belief cannot demonstrate) that the services offered under the PARTNER1 mark include "business administration of a program" services, the scope of services listed in the PARTNER1 Registration should be restricted to exclude such services.

65. Consequently, Mimecast seeks a declaration that the identified services covered in the PARTNER1 Registration should exclude "business administration of a program for resellers, distributors, system integrators, consultants and technology companies for participants to receive customized go-to-markets marketing strategies, benefits and requirements information; business administration of a program for resellers, distributors, system integrators, consultants and technology companies for providing licensing, order management and fulfillment of cyber security software products."

66. In light of this, Mimecast requests that the Court partially cancel and amend the services in the PARTNER1 Registration so that it properly describes Defendant's actual use of the PARTNER1 mark in commerce in the U.S. by adding the following language to the end of the services in the PARTNER1 Registration as follows: "but all such listed services excludes the business administration of programs to third parties," or as the Court otherwise believes would effectuate the clarification of the services Defendant offers under the PARTNER1 mark on the one hand, and which Mimecast offers under the MIMECAST PARTNER ONE mark and the

PARTNER ONE mark on the other.

67. Such partial cancellation and amendment to the PARTNER1 Registration will clarify that there is no likelihood of confusion between Mimecast's MIMECAST PARTNER ONE and PARTNER ONE marks on the one hand, and Defendant's PARTNER1 mark on the other by making it clear that there is no overlap in the services of Mimecast and Defendant under their respective marks.

68. Such partial cancellation and amendment to the PARTNER1 Registration will also ensure that the public is not misled to believe that Defendant's PARTNER1 Registration provides Defendant with trademark rights that are not supported by Defendant's actual use of the PARTNER1 mark.

## PRAYER FOR RELIEF

**WHEREFORE**, Mimecast prays for judgment in its favor and against Defendant providing the following relief:

A. Enter a judgment declaring that Mimecast, by using and registering for the MIMECAST PARTNER ONE and the PARTNER ONE marks has not violated and is not violating any rights of Defendant relating to trademark infringement under 15 U.S.C. § 1114, false designations and misrepresentations as to the origin or source of the services under 15 U.S.C. § 1125, or trademark infringement or unfair competition under New York law;

B. Enter a judgment declaring that Mimecast's use of its MIMECAST PARTNER ONE and PARTNER ONE marks in each case is not likely to cause consumer confusion or unfair competition as to source, affiliation, or endorsement with Defendant or its PARTNER1 services;

C. Enter a judgment declaring that Mimecast's use of its MIMECAST PARTNER ONE and PARTNER ONE marks in each case does not dilute, and is not likely to dilute,

Defendant's PARTNER1 mark within the meaning of 15 U.S.C. § 1125;

D. Enter a judgment, pursuant to 15 U.S.C. § 1119, ordering the USPTO to partially cancel Defendant's Trademark Registration No. 7,734,949 to make clear that Defendant's services promoted and rendered under the PARTNER1 mark (as described in the PARTNER1 Registration) do not extend the services that Mimecast provides under the MIMECAST PARTNER ONE and the PARTNER ONE marks;

E. Award Mimecast its reasonable attorneys' fees in bringing this action as allowed by law;

F. Award Mimecast costs incurred in bringing this action; and

G. Award Mimecast other relief as this Court deems just and proper.

Dated: June 3, 2025

NUTTER MCCLENNEN & FISH LLP

John C. Leddy, Esq.
655 Third Ave.
New York, NY 10017
(646) 440-8001
jleddy@nutter.com

Benjamin M. Stern, Esq. (*pro hac vice* forthcoming)
Seaport West, 155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000
bstern@nutter.com

*Attorneys for Mimecast Services, Ltd.*